IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOAN WALLACE, ) | CASE NO. 1:08 CV 2549 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Joan Wallace, for disability insurance benefits and supplemental security income.  The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Wallace had severe impairments consisting of fibromyalgia, sleep disorder, thoracic outlet compression syndrome, peripherovascular disease, and gastroesophogeal reflux disease.[1]  The ALJ made the following finding regarding Wallace's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she would require

---

[1] Transcript ("Tr.") at 14.

a sit/stand option, and would require a job isolated from the public, with only occasional contact with co-workers and supervisors.[2]

The ALJ determined that the above-quoted residual functional capacity precluded Wallace from performing her past relevant work.[3]

Based on a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Wallace could perform.[4] He, therefore, found Wallace not under a disability.[5]

Wallace asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Wallace argues that the ALJ committed four errors that deprive the decision of the support of substantial evidence:

- The ALJ failed to properly assess Wallace's fibromyalgia, particularly with respect to the evaluation of the reports of her treating physicians and the determination of her credibility;

- The ALJ's credibility assessment failed to take into account Wallace's mental restrictions as caused by her fibromyalgia;

- The ALJ's residual functional capacity finding failed to sufficiently compensate for the severity of Wallace's mental impairment; and

---

[2] *Id.* at 19.

[3] *Id.* at 20.

[4] *Id.*

[5] *Id.* at 21.

- The ALJ failed to include in the residual functional capacity finding limitations related to the use of Wallace's upper extremities.

I conclude that the ALJ's residual functional capacity finding lacks substantial evidence because the ALJ failed to give specific reasons for his finding as to Wallace's credibility. The case, therefore, must be remanded for reconsideration of the credibility and residual functional capacity findings.

**Analysis**

Despite numerous shortcomings in the administrative record, for which both Wallace's counsel and the ALJ bear some responsibility, this decision has a relatively narrow focus. The ALJ issued a much diminished residual functional capacity finding at the sedentary work level, with a sit/stand option and with restrictions on Wallace's interaction with the public, coworkers, and supervisors.[6] With due consideration for Wallace's criticism of the residual functional capacity finding for failure to incorporate restrictions on the use of her upper extremities, the adverse finding at step five of the sequential evaluation process rests upon one job identified by the vocational expert – the security monitor job.[7] Counsel for Wallace acknowledged at the oral argument that, in the context of this one, limited job, substantial evidence supported the exertional limitations in the residual functional capacity finding and that the security monitor job reflected a significant number of jobs for purposes of step five analysis.

---

[6] *Id.* at 19.

[7] *Id.* at 583-84.

The issue, therefore, becomes whether the fibromyalgia impairment imposed greater nonexertional, work-related limitations than those reflected in the residual functional capacity finding. Although Wallace argues that she had comprehension, persistence, and pace problems that made the security monitor job unsuitable; and this is somewhat reflected by the opinions of certain consulting, examining psychologists;[8] the real problem is the pain from the fibromyalgia and Wallace's ability to work without distraction and unacceptable absenteeism.

Wallace testified that her pain was so bad that she could not concentrate and at times could not function.[9] The ALJ found her not credible and did some articulation largely unrelated to the factors set out in the regulations.[10]

Three of my prior, reported decisions illuminate the path to decision here – *Wines v. Commissioner of Social Security*,[11] *Swain v. Commissioner of Social Security*,[12] and *Cross v. Commissioner of Social Security*.[13]

---

[8] *Id.* at 244, 344-45.

[9] *Id.* at 567-69.

[10] *Id.* at 18, 19-20.

[11] *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954 (N.D. Ohio 2003).

[12] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986 (N.D. Ohio 2003).

[13] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

*Wines* and *Swain* discuss the analytical framework applicable to claims of fibromyalgia as the disabling impairment. They set out the law regarding expert opinions and credibility findings in such cases:

- Fibromyalgia is an unusual impairment whose diagnosis evaluation of severity, and assessment of limiting effects cannot be accomplished by reliance upon objective medical evidence.[14]

- Where a specialist has employed the appropriate diagnostic techniques applicable to fibromyalgia – trigger point analysis – and has the requisite treating relationship and documentation, that specialist's opinion as to work-related limitations is entitled to controlling weight under the agency's regulations and rulings.[15]

- In any event, because fibromyalgia defies evaluation by traditional diagnostic techniques based on objective medical analysis, the credibility finding is particularly important.[16] The ALJ must assess credibility based on the factors set out in the regulations and explain why the claimant's complaints of disabling pain are not credible.[17]

The Sixth Circuit in *Rogers v. Commissioner of Social Security*[18] substantially adopted this analytical framework.[19]

---

[14] *Swain*, 297 F. Supp. 2d at 990.

[15] *Id.* at 990-94.

[16] *Wines*, 268 F. Supp. 2d at 958.

[17] *Id.* at 960-61.

[18] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).

[19] *Id.* at 243-44.

*Cross v. Commissioner of Social Security*[20] contains a detailed discussion of the proper analytical approach to credibility under the regulations and the rulings[21] and sets out the legal basis for and the proper execution of the requirement that the ALJ give "specific reasons for the finding on credibility ...."[22] The *Cross* decision admonishes that

> [a]n ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible, and, if not, explain the finding in terms of the factors set forth in the regu1ations.\*\*\*  The articulation should not be conclusory; it should be specific enough to permit the [reviewing] court to trace the path of the ALJ's reasoning.[23]

One aspect of the *Cross* analytical framework must be adjusted in the context of fibromyalgia impairments. *Cross* talks about the role of objective medical evidence in the credibility equation.

> As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence." 20 C.F.R. § 404.152(c)(3). Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.[24]

---

[20] *Cross*, 373 F. Supp. 2d 724.

[21] *Id.* at 732-33.

[22] *Id.* at 733.

[23] *Id.*

[24] *Id.* at 732.

Because fibromyalgia defies evaluation based on objective medical evidence, the absence thereof does not create any "informal presumption" of no disability that must be overcome by other evidence of disabling pain. As stated in *Wines*, the credibility analysis, based on the factors set out in the regulations, and the ALJ's articulation of reasons supporting the credibility finding, take on heightened significance.

> This places a premium, therefore, in such cases on the assessment of the claimant's credibility. Although the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide, given the factors set out in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled. For purposes of judicial review, the ALJ's articulation of the reasons supporting his credibility findings becomes very important.[25]

This case is distinguishable from *Swain* and *Wines* in that the opinion of the treating rheumatologist does not address work-related limitations.[26] Although that opinion documents the existence of fibromyalgia and the severity thereof using proper diagnostic techniques for that impairment, the physician expressly declined to give an opinion as to work-related limitations.[27] The only true residual functional capacity finding is that provided by an occupational therapist based on a one-time evaluation,[28] which would not qualify for controlling weight in this context.[29]

---

[25] *Wines*, 268 F. Supp. 2d at 958.

[26] Tr. at 389.

[27] *Id.*

[28] *Id.*

[29] *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 987 (6th Cir. 2009).

Nevertheless, as in *Wines*, although the disability cannot be decided under the analytical framework of *Duncan v. Secretary of Health and Human Services*,[30] the ALJ nevertheless had the duty to evaluate the subjective complaints of pain of Wallace and to articulate as to credibility using the factors set out in the regulations as a framework.[31]

Here, the ALJ's articulation as to credibility is conclusory and minimal.[32] He discussed none of the factors set out in the regulations.[33] His specific discussion of credibility addresses exclusively Wallace's depression.[34] Although depression is one component of the disabling effects alleged by Wallace, she clearly testified about her pain from fibromyalgia and the limitations caused thereby.[35] The ALJ responded "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reason's explained previously [*i.e.*, depression]."[36] This inadequate effort compels a remand.

---

[30] *Wines*, 268 F. Supp. 2d at 958.

[31] *Id.*

[32] Tr. at 18, 19-20.

[33] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[34] Tr. at 18.

[35] *Id.* at 567-69.

[36] *Id.* at 19-20.

The Commissioner argues that the ALJ's sparse articulation about credibility aside, the Court should affirm the decision because the Sixth Circuit has adopted no strict standards for such articulation, citing *Bowie v. Commissioner of Social Security*.[37] *Bowie* does not involve credibility. Rather, the *Bowie* court decided whether the ALJ needed to acknowledge a claimant's borderline age status explicitly and to explain which age group is most appropriate under 20 C.F.R. § 404.1563(b).[38] The court decided that the regulation did not impose a procedural explanatory requirement.[39] Apparently, the Commissioner wants me to apply *Bowie* by analogy to the credibility determination.

I refuse to do so. The Sixth Circuit has expressly stated that "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."[40] And the Social Security Administration in its rulings has provided for a statement of "specific reasons for the finding of credibility ..." in a policy interpretation ruling.[41] The ALJ, therefore, had a "procedural obligation"[42] to address Wallace's credibility and explain, in terms of the

---

[37] *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395 (6th Cir. 2008).

[38] *Id.* at 400-01.

[39] *Id.* at 400.

[40] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[41] Soc. Sec. Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 (July 2, 1996).

[42] *Bowie*, 539 F.3d at 400.

applicable regulations,[43] his reasons for the credibility finding. The ALJ here did not satisfy that procedural obligation.

**Conclusion**

Based on the foregoing, I conclude that the ALJ's residual functional capacity finding is not supported by substantial evidence. I, therefore, reverse the decision of the Commissioner denying the applications for disability insurance benefits and supplemental security income and remand the case under sentence four of 42 U.S.C. § 405(g) for reconsideration of that finding with specific reasons stated, in terms of the applicable regulation, for the evaluation of Wallace's credibility.

IT IS SO ORDERED.

Dated: November 9, 2009                                s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[43] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).